Your Honor, if it may please the Court, Appellant is asking that the Court reverse and remand the order of dismissal from the District Court of Connecticut. The District Court made a series of errors, the first being that privilege must be pled in the complaint stage, in the pleading stage. We believe that privilege is a defense and it is not a grounds for dismissal. We've said in other cases, though, that an affirmative defense could be raised in a 12B6 motion prior to an answer, right? Yes, Your Honor. You have to file an answer in order to move, if the affirmative defense is clear on the face of the complaint, right? Yes, Your Honor. All right. But in this case, the court would have had plaintiffs anticipate and defeated defense before it's actually pled. In the Marone case, Marone versus- You were given a chance to respond to the privilege question, weren't you? I'm sorry, Your Honor. You were given an opportunity to respond to the privilege question. I thought I did, I'm sorry. No, no. I mean, when it was raised in the District Court in the motions. Yes, we were. So you had that opportunity to engage with regard to the scope and the extent of the privilege. Yes, we did. Okay, all right. Let me just ask you a fundamental question about the merits that I just don't understand. And if a law firm gets hired to do an internal investigation regarding claims of harassment, sexual harassment, or some other harassment, they conduct the investigation. Their job is to communicate that back to the company. Your position is that by doing so, they're subjecting themselves to a defamation. How is an attorney supposed to operate in that sphere if by giving the results of the investigation back to the necessary people at the corporation, they're committing a defamation? Explain that to me. I just don't understand how that would work. The question, we believe, is what was the law firm hired to do? If it did not present legal advice, then it was not operating as a law firm, but rather as an investigator. Law firms do a number of things that do not give them immunity to- Even if they're doing an investigation to see whether it's true or not, right? Just trying to find out, did the harassment happen or not? You're saying they can't communicate the results of that back to the company without subjecting themselves to harassment, to defamation? To their client, yes. But in this case, it was sent, unless these were constituent employees. Employees- It went to their client, it went back to the hospital. The report went back to the hospital. Yes, it did. Are you claiming that that is publication for purposes of defamation? But it also went to employees. First, the hospital. Yes. Are you claiming that by reporting back to the hospital that was publication for defamation purposes? Not to the hospital, your honor. You seem to have taken that position in your briefing, but you're backing off of that now? Well, we believe that the The communication, it is not the, it is not legal advice to repeat- It doesn't matter. Put aside whether it's legal advice. They conduct an investigation, they interview witnesses. The witnesses make certain statements. Your client feels that those statements are defamatory. The law firm reports back to the hospital, the employer. The witnesses said the following. Is that publication for purposes of a defamation claim? Yes, it is. Okay. Why wouldn't it be privileged, though? Why wouldn't a qualified privilege apply to that? It's for a proper purpose. There's certainly an interest in having law firms be able to report back the results of an investigation to their client. Why wouldn't a qualified privilege apply there? Well, we don't believe- I know that wasn't the grounds the district court decided, but they raised that below. And there are cases that say that that's a qualified privilege. It is, we believe that it is. There are many things that law firms can be hired to do. And privilege only immunizes them when they are acting as law firms. No, you could hire non-lawyers, investigators, to see whether there's harassment happening at your company or not. It doesn't matter whether you're a lawyer or not. Whoever you hire, we want to know if there's harassment going on in our company. Find out. You interview employees. They report back to the company. How can that not be qualified privilege? Because the privileges when they're doing their job. Their job was not to report back unverified defamatory statements based on race. When you said unverified, what do you mean? They're trying to verify. That's what they're hired to do. They did not try to verify. They absolutely did not try to verify. Why would any law firm take on such an assignment if they could be sued for defamation for simply reporting back to their client their findings in their investigation? Then maybe a law firm shouldn't, if the law firm is concerned, they were certainly, they could have hired an ex-FBI agent or a- Do you agree that the law firm was the agent of the hospital? Yes. Isn't a basic principle of agency law that information imputed to the agent is imputable to the principal? Yes, to the hospital, but not the hospital. Whatever information the agent passes on to the principal is not publication. Can't possibly be publication because the minute the agent knows it, the principal knows it in the context of imputing who has the information is imputable to them. There's no publication whatsoever. I hire you to do something for me and you go out and you find information. The minute you have that information, it's imputed that I know it also. That's basically the print agency law, agency 101. There's no publication here. You disagree? I disagree. There's no Connecticut law saying that for this purpose, that for purposes of defamation, there is agency here. And the only case that was cited by the court was a Florida case. And there is simply no Connecticut law that the court cited. You cited a case, a case involving the dismissal of the chemist. But there, we're back to Judge Bianco's question, because there, the qualified privilege attaches absent proof of malice. So communication between two employees within the employer is all qualified privilege absent malice, and you haven't even alleged that, have you? We don't believe we have to allege that. We're anticipating at the pleading stage. You're hearing closely the Connecticut law, and I was reciting to you one of the Connecticut cases that you yourself cited. Yes, Your Honor. Okay. All right, thank you, Mr. Deere. You have your three minutes in rebuttal. We'll hear from Mr. Shea. Good morning, Your Honors. May it please the court. My name is James Shea. I represent Jackson Lewis. Your Honor, the district court properly granted the motion to dismiss on the grounds that the plaintiff failed to allege publication of a defamatory statement by Jackson Lewis to a third party. Let me ask you this, because I think the publication issue is a little more complicated than suggested in the briefs. You would agree that what we have here is an agent of the corporation, a law firm reporting to managers within the corporation, other agents, right? Correct. All right. So in this case, Toros Cyan, it's Connecticut Supreme Court, rejected that they said intra-corporate communications, one agent to another, are publication. You could still have a qualified privilege, but they rejected this idea that communication between agents of a company is somehow not publication. And in fact, that's exactly what the Florida case relied on. Not every state agrees with that. But Connecticut Supreme Court, and then I can cite to you 10 or 15 cases after that, where Connecticut courts have said that agent to agent within a company is publication, but could still be qualified privilege. So why isn't this more properly looked at under qualified privilege? How do you get around the Toros Cyan case? Well, because your honor, that case deals with the intra-corporate communication privilege. We're talking about a qualified privilege between an agent and a principal. What do you mean? The company is the principal. Everybody's an agent of a corporation, right? You're not making a distinction. If it's two managers communicating with each other, Connecticut says that's a publication, right? The CEO talks to the general counsel, right? They say that's a publication, even though it's within the corporation. So I'm a little troubled that we would ignore that. We said in Abrahams, we had relied on Toros Cyan to say that within a corporation, it is publication, one agent to another. I don't think we can rely on the fact that it's an outside law firm. I think that would be, you can't sustain that. Because then if you had inside counsel, someone in-house does it, it would be a publication because it's agent to agent. But if it's an outside law firm, it's not a publication. It doesn't make sense. I think there's a distinction to be drawn between two managers having a communication within the corporation. And a principal retaining an agent to act on its behalf. Not all managers are agents of the corporation in every instance. Or every communication. Suppose you even hire a law firm, you have the in-house counsel do it. Agent, it's a lawyer, but agent of the law firm, that would be a publication under Connecticut law. I don't believe so, your honor. I don't believe so. Let me read you the, although intra-corporate communications once were considered by many courts not to constitute publication of a defamatory statement, that view has almost entirely been abandoned, and we reject it here. But the law firm reporting back to the client is not an intra-corporate communication. It's different in nature. It's agent to agent. But it's not intra-corporate, and I think that's a key distinction here. This is, as was pointed out before, the second that an agent becomes aware of information, it is automatically imputed to the principal. So in this case, and the district court pointed this out, in this case, as soon as Jackson Lewis became aware of these statements, that knowledge was imputed to Norwalk Hospital. Before- Hold on, hold on. Under that theory, then they could report to anybody within the company, because they're all agents. It's imputed to, the knowledge is imputed to the company, so they could tell 25 people. They could send an email around to every employee, here are the results of our investigation, because knowledge is imputed to every agent of the corporation, and we know that wouldn't work, right? That's correct. That would be a publication, and that- Why? If they're all agents, and if knowledge is imputed to the company, why isn't that, why is that? Because the corporation only acts through its constituent employees. And if the communication is made outside that constituent group, then it is a publication. What's that constituent group? It's the, it is, if you look at Upjohn, or if you look at the rules of professional conduct, that tells us. Upjohn tells us that it is the corporate employees acting at the direction of their corporate superiors, who communicate to counsel that which is needed to supply the basis for the legal advice. So it's that core group of- What's the problem with looking at this under qualified privilege? What's the issue with that? I don't think there's a- The Sixth Circuit, looking under Michigan law, did exactly that. It was a law firm internal investigation. They said qualified privilege under Michigan law. What's the issue looking at it that way? I believe you could look at it through the qualified privilege. I believe the district court was very sympathetic to that argument in that last footnote in the memorandum. I think the district court, in its own sound discretion- Because if you looked at it under qualified privilege, my hypothetical to you, if they send it to too many people within the corporation, that would be going beyond the scope of the qualified privilege. They sent it to too many people that was necessary to fulfill their function. It more neatly fits the qualified privilege, right? That issue of how many people do you give it to the company, within the company? I think it applies to both publication and qualified privilege. I think it applies better in the context of the qualified privilege argument. I take it you'd be happy to proceed with qualified privilege? Yes, for the reasons we laid out in our brief. I believe it applies and I believe the communication enjoys a qualified privilege. It was not reached by the district court. The complaint talks about several publications. One, to the hospital. It's hard to figure out what the hospital is, but it seems that since Jackson Lewis was hired by the hospital, it would be implied. And then also a publication between Jackson Lewis and plaintiff's counsel. I would think a fair reading of the complaint is that that communication is between whoever it was that hired Jackson Lewis at the hospital, and Jackson Lewis, is that the way you understand that? Correct, there's- Go ahead. Yes, so there's three publications alleged in the complaint, one being to Norwalk Hospital. One being to- To Norwalk Hospital, an entity. The entity, correct. One being to employees of Norwalk Hospital. Okay, now let me stop you there. There we run into the case that Judge Bianco mentioned, and the issue of qualified privilege, because Connecticut seems to have said, look, if it's between, if it's laterally, because in that case, it was between a number of supervisors of this fellow, and they shared the information among themselves, and the court said that's publication. Okay, it didn't talk about literally, in a linear fashion, from one individual to a higher up, that case doesn't talk about that. And that wasn't the theory for the plaintiff in that case. But, and then the third publication was to the- To plaintiff's counsel, correct. Okay, all right. Correct. Back on the publication, to be defamatory, a statement has to be published to a third party, right? Would publication to, from one agent within the corporation to another agent within the corporation, fit within, constitute publication to a third party? I think it would depend on what the second agent was engaged to do. So a non-party is anyone other than the plaintiff and the company here. So, potentially, but without more, I don't think we can say for certain. Okay. All right. Thank you. There you go, three minutes. Your Honor, unless you have additional questions, I'm prepared to rest on our leaves. You didn't address this, you alleged that it was- I'm sorry, I'm having a hard time hearing. I think you alleged, it was mentioned just now, it reminded me that sending it to the lawyer for your client is problematic. But again, isn't that, if someone's trying to advise the person what the results of the investigation are, wouldn't that also, we could argue whether that's a publication or not because it's an agent of your client. But isn't that also qualified privilege as well, that you're trying to, it's a proper purpose to inform the employee of the results of your internal investigation by sending it to his or her attorney, right? The case law says that the attorney has to be the same attorney who represented the victim of the defamation. That case law, we're talking about qualified privilege, right? I'm talking about qualified privilege. I'm sorry. So if you're saying I want to get the results to the employee, he has this lawyer, whether it be for the internal investigation, whether it be for a lawsuit, but this is the lawyer we know to give it to, and we give it to the lawyer. Why isn't that a proper purpose, an interest to make sure that the client, that the subject of the investigation knows what the results are so they can object to it or do whatever they want with it? Yes, Your Honor. Don't we want to encourage that? Yes, Your Honor. All right. All right. I don't think there are any other questions. Thanks. Thank you. Thank you, Your Honor. All right, we'll reserve decision. Thank you both for coming in. Have a good day. Thank you, Your Honor. Safe journey home.